LANE *v.* MICHIGAN TRACTION CO.

1. STREET RAILWAYS—GRANT OF RIGHT OF WAY—TRACKS—TRESTLE.

A grant of a right of way to a street-railway company, authorizing it to operate a road as then maintained and required to be operated under a franchise granted to it by a certain city, which required the rails to be laid and maintained in such a manner as not to obstruct the free passage of vehicles, the upper surface to be laid flush with the surface of the streets, and the tracks to conform to the established grade of the streets, does not give it a right to construct a trestle for its tracks.

2. SAME—CHANGE IN GRADE OF STEAM ROAD—DAMAGE TO LANDOWNER.

Where a street railway crosses a steam railroad in a subway on the latter's right of way, it is not liable in damages to an adjoining landowner for a slight depression of its tracks or the raising of the grade of the railroad, it appearing that the steam road was constantly raising its grade at that point.

3. RAILROADS—GRADES—ESTOPPEL.

Complainants' consent to the building of a railroad below grade at a point where it crossed the right of way granted by them to a street railway did not estop them from claiming

damages against the street railway for building a trestle for its tracks over the other road.

4. STREET RAILWAYS—RIGHT OF WAY — TRESTLE — INJUNCTION — DAMAGES.

A suburban electric railway having a grant of a right of way requiring the laying of its tracks upon the grade of the land, having been refused permission by the State Railroad Commissioner to make a grade crossing with another road, will not be enjoined from building a trestle over such road on complaint of the grantors of the right of way, but will be required to pay such damages as are fairly chargeable to the erection of the trestle on their land.

5. EQUITY JURISDICTION—DAMAGES FOR TAKING LAND.

Equity, having obtained jurisdiction of a suit to restrain a railway company from building a trestle, after denying the relief sought, may retain jurisdiction for the purpose of awarding damages.

Appeal from Kalamazoo; Adams, J. Submitted October 21, 1903. (Docket No. 58.) Decided November 17, 1903.

Bill by M. Henry Lane and Frank B. Lay against the Michigan Traction Company to restrain the construction of a trestle. From the decree rendered, both parties appeal. Modified and affirmed.

*E. M. Irish* (*Dallas Boudeman,* of counsel), for complainants.

*Alfred J. Mills,* for defendant.

HOOKER, C. J. The complainants own land in the southeasterly portion of the city of Kalamazoo, which is platted, and is called "Factory View Addition." Our understanding is that the proof shows it to contain 9 acres, but, if the map is drawn to scale, the premises are about 1,000 feet long by 300 feet wide, making less than 8 acres. The north end fronts on Lake street (a good street), and the premises extend south to the track of the Grand Rapids & Indiana Railroad Company, which is upon an

embankment 10 or more feet high at this time.   In platting the premises, a street called "Fulford Avenue" was laid out lengthwise of the parcel, north and south; there

being a row of lots on each side, fronting said Fulford avenue.   The land is low.   The accompanying diagram will serve to show the situation as it now exists.   Upon this diagram, Factory View addition is inclosed by a

crooked line, thus 〜〜〜. On the east it includes the right of way occupied by the Chicago, Kalamazoo & Saginaw Railroad. It consists of 35 lots, 4 of which front on Lake street. Thirteen lie south of Washington avenue extension, 2 are devoted to said extension, and 20, including the lots fronting Lake street, lie north of Washington avenue extension. The complainants own also what is called the "Reed Farm," lying principally southwest of the Grand Rapids & Indiana track, and the Riverside addition, lying north of Lake street. Counsel say that complainants designed Fulford avenue to connect these two parcels.

The defendant is a corporation, and was engaged in building an electric suburban line from Battle Creek to Kalamazoo, and contemplated entering the latter city *via* Lake street, and had graded to and plowed beyond the point where its track finally left Lake street and entered Washington avenue extension as projected. The plat of Factory View addition shows Washington avenue extension as projected, with the suburban road thereon. One Hays, who was a member of the South Side Improvement Company, and interested in a proposed park to be called "Recreation Park," conceived the idea of having the suburban road enter the city *via* Washington avenue, and negotiated such an arrangement with the suburban railway company, and ultimately secured deeds of a right of way for the railroad from landowners east of Cameron street, including the complainants' right of way, over which the proposed extension of Washington avenue would naturally go. The complainants' deed reserved the right to cross the defendant's road with streets, and also reserved a right of way for a belt-line road. The defendant then constructed the railroad until it reached the Grand Rapids & Indiana embankment, which at that time was 4 or 5 feet above the adjacent land at the place of crossing. Meantime the Chicago, Kalamazoo & Saginaw Company acquired rights in the belt-line strip on the easterly side of the complainants' Factory View addition, and made a cut

3 or 4 feet deep, which was afterwards bridged by defend-
ant's track temporarily. Soon after, the State Railroad
Commissioner refused to allow any crossing of the three
roads mentioned, at grade, in that vicinity; and ultimately
a contract was made between the three railroad companies,
by the terms of which the defendant was to build its road
under the Grand Rapids & Indiana Railroad track, and
over the Chicago, Kalamazoo & Saginaw track on a trestle,
the cost to be apportioned according to the agreement.

The defendant thereupon constructed a subway under
the Grand Rapids & Indiana track, and began the erec-
tion of an embankment east of the Chicago, Kalamazoo
& Saginaw track, to connect with a trestle; and, when
about to commence the trestle in front of Factory View
addition, the complainants filed the bill in this cause to
restrain such building. A preliminary injunction issued,
but was dissolved on defendant's filing a bond, and the
trestle was completed, and the road is in operation. On
the hearing a decree was made allowing complainants
$6,500 damages for the depreciation of their property, aris-
ing out of a failure to build the road at grade and the erec-
tion of the trestle and embankment. The defendant
claims that it had a right to build the trestle, under the
deed, and, further, that the complainants are not injured
by the subway under the Grand Rapids & Indiana Rail-
road, and that the trestle was made necessary by the cut
made by the Chicago, Kalamazoo & Saginaw Railway
Company by consent of the complainants.

We are of the opinion that the deed upon which the de-
fendant relies contains provisions which forbid the infer-
ence of an intention to grant a right of way for a railway
above the grade of the street. This deed contains pro-
visions that indicate an intention on the part of both parties
that the track should be a surface road, to conform to the
grade that should be established for the street when opened;
e. g., it was authorized to construct, etc., and operate a
road "substantially as the poles and trolley wires of said

company are now erected and maintained on Washington avenue." Again: "It is further understood and agreed that the party of the second part * * * shall be required to operate its electric railway over the right of way hereby granted substantially in the same manner as under the franchise granted to it by the city of Kalamazoo, and under which it operates its line over Washington avenue at present." The ordinance referred to provides "that the * * * rails * * * shall be laid and maintained in such a manner as not to obstruct the free passage of vehicles over the same, and the upper surface of the same shall be laid flush with the surface of the streets, and such tracks shall conform to the grade of the streets as now established, or as may from time to time be established." Under the provisions of this deed quoted, the intention to limit the easement to a surface easement seems plain, and it cannot be construed to convey more than a right to build a road conforming to the street or surface. Counsel's claim that the deed gave the right to build and maintain the trestle is untenable.

Contrary to the expectation of the parties, the railroad commissioner forbade grade crossings. Thereupon the Grand Rapids & Indiana raised its grade, making it feasible for the defendant to go beneath its track through a subway. We find nothing in the record that indicates that the Grand Rapids & Indiana Company had not a right to raise its grade at will. Its track was built upon its own private right of way, and there is testimony that it was constantly raising its grade at this point, in furtherance of a policy of its own. The contract by which it made the subway possible was one that the parties had a right to make, and complainants had no right to complain of it. Nor were their rights infringed by the failure to construct a subway wide enough to accommodate travel aside from defendant's road. The highway then terminated west of the track, and, while the plat of Factory View addition indicated an offer of land for an extension of Washington avenue, it has never been accepted by the

city.   There seems to be no difficulty in widening the sub-way if the city shall ever care to do it.   The slight depression necessary to get room for the passage of cars under the Grand Rapids & Indiana track does not injure the complainants, but has rather benefited the property, and, as it is not upon the premises deeded by them, defendant's right does not rest or depend upon their grant.   It is apparent that the controversy does not depend to any great extent upon this subway, but rather upon the trestle.

Counsel for the defendant says that the complainants' conduct has been such as to create an equitable estoppel against a claim that the trestle could not lawfully be built, inasmuch as they countenanced, if they did not authorize, the building of the Chicago, Kalamazoo & Saginaw and belt-line roads.   It is true that they reserved a right to build a belt line.   Of this the defendant cannot complain, for it accepted the deed subject to this right.   It is also true that the record indicates a consent on the part of the complainants that the Chicago, Kalamazoo & Saginaw should cross the right of way that they had granted to the defendant, below grade, and this might justify an inference of a willingness that Washington avenue extension should be lowered to the grade of such cut at that point. But this question is not here, and, if the order of the railroad commissioner is to be enforced, both complainants and defendant have been benefited by the cut made by the Chicago, Kalamazoo & Saginaw Railroad Company, because it lessens the height of the trestle that would otherwise be necessary.

We have, then, this situation:   The defendant has lawfully and in good faith constructed and put in operation a permanent public improvement, and, without its fault, the police requirements of the State have made the erection of a trestle necessary.   It is apparent that there is no other way of operating the road.   The complainants, relying upon the letter of their deed, insist that defendant has no right there, and have come into a court of equity, asking that it be compelled to tear up its track and abandon its

road.   We think that they are not entitled to such relief.
On the other hand, they are no more responsible for the
condition of affairs than is the defendant, and are entitled
to reasonable compensation for such damages as are fairly
chargeable to the erection of the trestle upon their land.
It is urged that they should be remitted to their remedy at
law for these, and that this bill should be dismissed; but
authorities are numerous to the effect that chancery, hav-
ing entertained jurisdiction for one purpose, as in this case,
may retain it for the purpose of doing complete justice in
the premises.   The authorities cited by counsel sufficiently
show this, and need not be repeated in this opinion.

The complainants claim compensation for depreciation
of value of the lots upon Factory View addition, and
make a similar claim as to the Riverside addition and
Reed Farm.   All of the former lies north of Lake street,
and most of the latter south and west of the Grand Rapids
& Indiana track.   We think neither has suffered from
the building of the trestle.   The claim that Fulford ave-
nue was to connect the two does not appeal to us, *first*,
because Lake street is a much more natural approach to
Riverside, and Washington avenue, as already opened,
offers every facility requisite to Reed Farm; and, *second*,
the Grand Rapids & Indiana Company had a right to
raise its tracks, and its doing so has made the crossing of
Fulford avenue safer and comparatively easy; and, *third*,
the defendant is not liable for injury to Fulford avenue
caused by raising the Grand Rapids & Indiana track.
This street could also cross the suburban road by a sub-
way without much difficulty, so that Reed Farm and
Riverside are not seriously affected by the obstacles to the
opening of Fulford avenue.

The claim of damages to Factory View addition is pred-
icated upon the combination of circumstances which sur-
round a portion of it on three sides, by cut, fill, and trestle.
The defendant is not to blame for the cut, or the embank-
ment of the Grand Rapids & Indiana Company.   Each
had the right to make its cut or fill, and the defendant

committed no actionable wrong when it arranged with the latter for a subway. It is responsible for its trestle and embankment, and for nothing more. Witnesses were called to give their opinions upon the amount of injury done to these lots in Factory View addition, to the Reed Farm, and to Riverside. They have also made the situation of the premises plain. The damages given by the learned circuit judge seem to include: (1) Damages for an embankment east of complainants' premises, upon the land of others, who have consented to its erection, upon the theory that it precludes the future opening and use of Washington avenue extension. (2) That the trestle and embankment are rough and unsightly, and obstruct the view from the south part of Factory View addition to the north, and from the north part to the south. (3) That the trestle is so low as to prevent Fulford avenue passing it in a subway, and that Factory View addition and a portion of Reed Farm are damaged because of the practical impossibility of carrying Fulford avenue over or under the trestle and the Grand Rapids & Indiana track; and the court said that, although defendant should so arrange its trestle as to permit Fulford avenue to go beneath it, still the Grand Rapids & Indiana embankment is so high that the street could not be carried under it without almost unwarranted expense.

From the foregoing, we conclude that, of the $6,500 allowed as damages, a portion was for injury to Reed Farm, and a portion for the obstacles in the way of the extension of Washington avenue east of the Chicago, Kalamazoo & Saginaw track, if that should be desirable. No damages appear to have been given for injury to Riverside addition. We have no way of ascertaining how much of the amount decreed was given for one or another of these things. From the situation of these premises as shown by the map, and the description given by the witnesses, we are satisfied that no damages were suffered by reason of this trestle to Reed Farm or Riverside addition. Some damage was suffered by reason of the necessity of depress-

ing Fulford avenue at the trestle, and some depreciation
of lots south of the trestle, and the two lots adjacent to
Washington avenue north of the trestle; and we think
$2,000 ample recompense for these items.

The decree of the circut court will be modified in the
matter of damages as indicated, and otherwise affirmed.
The defendant will recover costs of this court.

The other Justices concurred.